85 N.J. Super. 56 (1964)
203 A.2d 721
BOROUGH OF NORTHVALE, PLAINTIFF-RESPONDENT,
v.
MARIO BLUNDO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1964.
Decided October 6, 1964.
*57 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. James P. Logan argued the cause for appellant (Messrs. Logan & Logan, attorneys).
Mr. James J. Hogger argued the cause for respondent (Messrs. Fornabai & Hogger, attorneys; Mr. Hogger, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant was convicted in the Northvale Municipal Court for violation of the local zoning ordinance in that he parked a commercial vehicle at night in the driveway of his home, located in the residence A zone of the borough, instead of housing it in a garage. He appealed, and following a trial de novo the County Court affirmed the municipal court decision and imposed a penalty of $15 fine and $5 costs. After unsuccessfully moving for a new trial defendant appealed to this court.
The facts are not in dispute. We first deal with the Northvale zoning ordinance and its amendments and supplements. *58 The borough adopted its basic zoning ordinance in September 1955. Article V, section 1, relating to the residential A zone in which defendant has his residence, provided that no building, land or premises shall be used, and no building erected, which is designed or intended to be used in whole or in part for any purpose except a one- or two-family dwelling. That section also permitted a private garage or other accessory building customarily incidental to any use permitted thereby, provided it was on the same plot. Article VI permitted the continuance of any nonconforming use or structure existing at the time of the passage of the ordinance. It is to be noted that the 1955 ordinance did not define "accessory use," nor in terms generally provide for uses incidental or accessory to the residence use.
The borough adopted a supplement to the zoning ordinance in May 1956, some eight months later. It provided therein that storage space for not more than four motor vehicles was permitted in a private garage (defined in the original ordinance) in any residential zone, "including space therein for not more than one (1) commercial vehicle" of no more than 1 1/2-ton capacity.
The borough governing body turned its attention to this new section of the zoning ordinance when, on June 12, 1963, it adopted an amendatory ordinance which provided:
"Any garage in the `A' residential zone shall contain storage space for not more than four motor vehicles including space therein for not more than one commercial vehicle of a capacity of not more than one ton. No commercial vehicle shall be parked out of doors overnight in the `A' residential zone and such night parking in said zone by a commercial vehicle of one ton or less shall be in a garage. No commercial vehicle of any type shall be parked on the street in the `A' residential zone except for deliveries or services to or for residents on the said street."
There is a one-car garage located on defendant's residential property. Prior to the adoption of the last-mentioned ordinance defendant was the owner of a Ford Falcon panel truck, euphemistically referred to in his brief as a "station wagon." *59 Defendant's business, Appliance Master Co., was advertised in prominent letters on the side panels, below which appeared his business and residence telephone numbers in equally large letters and figures. Defendant had regularly used this vehicle for going to and from his place of business.
On July 24, 1963, soon after the passage of the amendatory ordinance just quoted, defendant got in touch with the local chief of police and told him he wanted to test the legality of the ordinance. He asked that the chief sign a complaint and issue a summons against him for parking his commercial vehicle in the driveway of his home at night. The chief of police served the summons at 9 P.M., testifying that the vehicle was then in the driveway while defendant's passenger car was in the garage.
Defendant contends that the parking of his commercial vehicle overnight and on weekends in the driveway of his residential premises amounts to an accessory use, where the vehicle was used for the sole purpose of his going to work in the morning and returning home at night, and where no business was conducted at the premises. The parking having been uninterrupted and continuous prior to the adoption of the 1963 amendatory zoning ordinance prohibiting such a use, it is defendant's claim that he enjoys a prior nonconforming use which cannot be affected by the ordinance.
As noted, the original zoning ordinance of 1955 did not specifically prohibit the parking in question. Nor do we find an express prohibition in the 1956 supplement. We therefore come to the question of whether defendant's parking of the commercial vehicle in his driveway was an accessory use. Although neither ordinance spoke in terms of a use accessory to the residence use, an accessory use must ordinarily be implied  as a matter of law  as a right which accompanies the principal use. See 1 Rathkopf, Law of Zoning and Planning (3d ed. 1960), pp. 23-4, 5. As we said in Zahn v. Newark Board of Adjustment, 45 N.J. Super. 516, 521-2 (1957), the allowance of a primary use "generally authorizes all uses normally accessory, auxiliary or incidental thereto." *60 After referring to several definitions of "accessory use," we defined the term generally as a use "customarily incidental to the principal use" of the building. We repeated that definition in Borough of Chatham v. Donaldson, 69 N.J. Super. 277, 282 (1961), adding thereto that the use be "so necessary or commonly to be expected that it cannot be supposed that the ordinance was intended to prevent it." The source of this expanded definition would seem to be Pratt v. Building Inspector of Gloucester, 330 Mass. 344, 113 N.E.2d 816 (Sup. Jud. Ct. 1953), referred to in Zahn.
In our view, defendant's parking of his commercial vehicle in the driveway of his home located in the highest residential district of the borough  a quality neighborhood, to judge from the exhibit in the record submitted  did not attain the level of an accessory use under the 1955 ordinance as supplemented in 1956. It was not such a use as one could reasonably say was customarily incidental to the residential use, nor one so necessary or commonly to be expected that it cannot be supposed that the ordinance was intended to prevent it.
Defendant calls attention to Mountain Lakes v. Mola, 60 N.J. Super. 421 (1960), a County Court decision, as presenting almost identical facts. Defendant Mola parked his halfton pickup truck in the driveway of his premises located in the B residential zone of Mountain Lakes  a use not expressly prohibited in that zone. As in this case, he used the truck to go to and from work. The township argued that such parking was, by implication, not permitted. The county judge held that the parking was an accessory use, emphasizing that defendant made no commercial use whatever of his residence. We find this latter fact not determinative, consider the Mountain Lakes result erroneous, and overrule the conclusion reached. Although not exact precedents which might be followed, reference may be made to People v. Scrafano, 307 Mich. 655, 12 N.W.2d 325 (Sup. Ct. 1943) (storing commercial vehicles in a private garage in a residence zone, held a violation of the zoning ordinance); Dumais v. Somersworth, *61 101 N.H. 111, 134 A.2d 700 (Sup. Ct. 1957) (private garage held an accessory use in a residential district, but parking commercial vehicles therein violated the zoning ordinance although it was silent with respect to garages or accessory uses in any district); Facci v. Schenectady, 13 Misc.2d 247, 176 N.Y.S.2d 827 (Sup. Ct. 1957) (overnight parking of a commercial vehicle in the driveway held not an accessory use to a dwelling in a residential area).
We have heretofore pointed out that the 1956 supplement did not expressly forbid the parking of a commercial vehicle in a driveway in a residential A zone. It is to be noted, however, that in allowing four motor vehicles to be stored in a private garage in such a zone, the borough permitted one of the spaces to be used for a commercial vehicle not exceeding 1 1/2-ton capacity. Here was an indication, however indirectly expressed, that the municipality wanted such vehicles kept under cover. This was made explicit in the 1963 amendatory ordinance, which prohibited out-of-doors overnight parking of commercial vehicles in the A residential zone, but allowed a commercial vehicle not exceeding one-ton capacity to be kept in a garage.
We conclude, therefore, that defendant did not have an accessory use prior to the effective date of the June 12, 1963 ordinance. Accordingly, he could not have enjoyed a nonconforming use such as would have escaped the prohibition of that ordinance.
Defendant argues, finally, that since the 1963 amendatory ordinance prohibited out-of-door overnight parking of commercial vehicles in the A residential zone only, and since the provisions relating to the B residential zone were identical except for frontage requirements, the amendment violated the Constitutions of New Jersey and the United States. We find the exercise of the municipal zoning power reasonable. N.J.S.A. 40:55-31 authorizes the governing body to divide a municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of the Zoning Act, and to regulate and restrict the use of buildings *62 or other structures, and the nature and extent of the uses of land, within such districts. It goes on to provide that all such regulations "shall be uniform for each class or kind of buildings or other structures or uses of land throughout each district, but the regulations in one district may differ from those in other districts." We have held that it was not within the intent of the Zoning Act that conditions in one type of zone should necessarily be used as a yardstick in determining what might or might not be done in another type of zone; in short, "What may or may not be done with any structure in any given zone must be determined by conditions existing within the particular zone in which the structure is located." Alker v. Collins, 2 N.J. Super. 11, 14 (App. Div. 1949). Although the A and B residential zones of Northvale might be similar in many respects, the governing body obviously considered the 1963 zoning amendment necessary in order to insure that the A zone remain a truly high and exclusive residential zone. Where the reasonableness of the zoning regulation is fairly debatable, the general rule is that the legislative judgment should prevail. See Schmidt v. Newark Board of Adjustment, 9 N.J. 405, 416 (1952).
Affirmed.