QUESTION: Are state certified general contractors, building contractors, or residential building contractors under s. 468.102, F. S., qualified to construct or repair tennis courts, of one or more of the following types: Clay courts, fastdry tennis courts, hot leveling courts, cold cushion courts, combination hot plant and emulsified asphalt mix, emulsified asphalt mix, hot plant mix courts, Atlashield concrete stain?
SUMMARY: Under ss. 468.101 and 468.102, F. S., the activity of constructing and repairing tennis courts of all kinds or types falls within the scope of, and is regulated by, part II of Ch. 468, F. S., since tennis courts are reasonably included within the broad and comprehensive terms "structure" and "related improvements to real estate" and "accessory use structure" in connection therewith as those terms are used in the construction industry licensing statute. Certified general contractors may construct and repair all types of tennis courts without limitation. Certified building contractors and residential building contractors may construct and repair any kind of tennis courts when those courts are accessory use structures to the particular types of buildings and structures and family residences prescribed in s. 468.102(1)(b) and (c), F. S. The answer to each of the above is in the affirmative. Section 468.101, F. S., declares it to be the public policy of the state that the business of construction and home improvements is a matter affecting the public interest, and any person desiring to obtain a certificate to engage in the business, as defined in s. 468.102, F. S., on a statewide basis, shall be required to establish his competency and qualifications to be certified as provided in part II of Ch. 468, F. S. When a certified contractor desires to engage in contracting, as defined in the statutes, in any area of the state, the only prerequisite therefor is the exhibition to the local building officials of evidence of his state certification and payment of any required building permit fees. See s. 468.106(6). The areas and activities of the several categories of state certified contractors defined in s. 468.102, F. S., within the purview of ss. 468.101 and 468.102, F. S., have been preempted to the state, subject to the limitations prescribed therein, and therefore local governments are not authorized by law to regulate in those areas and may only charge a building permit fee and require evidence of certification. Sections 468.101 and 468.106(6), F. S. The threshold issue, therefore, is whether or not tennis courts are structures or related improvements to real estate or accessory use structures as contemplated by ss. 468.101 and 468.102, F. S., and as those terms are used in the statute. "It has been said that the word `structure' is very comprehensive . . . and that it may be used in a broad sense or in a more restricted sense." 83 C.J.S. at 547. "Structure" has been defined to mean "[a] thing built, erected, or fabricated" or in a more restricted sense, "a building of any kind." The term "construct" also has been defined to mean "to build, erect, fabricate, form or make [something]." 16A C.J.S. at p. 1232. The term "construction" is also a word of variable meaning, and is similarly defined. 16A C.J.S. at p. 1234. Likewise, the words "improve" or "improvements" are comprehensive terms whose meanings must be ascertained from the context and the subject matter of the instrument in which they are used. "The term [improvement] implies the prior existence of something to improve; it may be employed to designate any beneficial or valuable change or addition." 42 C.J.S. at 416. The above defined terms, as employed in ss. 468.101 and 468.102, F. S., appear to be used in a comprehensive and general sense as related to the business of construction and home improvements as defined by the statute rather than in a technical or restricted sense. The use by the Legislature of comprehensive terms or terms of general import ordinarily indicates an intent to include everything embraced within such terms, and statutes using such comprehensive terms without qualification should be given an equally comprehensive meaning. Florida Industrial Commission et al. v. Growers Equipment Co., 12 So.2d 889, 893-894 (Fla. 1943); Florida State Racing Commission v. McLaughlin, 102 So.2d 574, 576
(Fla. 1958). In consideration of the foregoing statutory provisions, definitions, and rules of construction, I am of the opinion that the activity of constructing and repairing tennis courts of any kind falls within the scope of, and is regulated by, ss. 468.101 and 468.102, F. S., since tennis courts can reasonably be included within the broad parameters of the terms "structure," "related improvement to real estate," and "accessory use structures" in connection therewith, as those comprehensive terms are used in the statute. Part II of Ch. 468, F. S., defines "general contractors" as "those whose services are unlimited about the type of work which they may do as set forth in [s. 468.102(1), F. S.]." It would follow then that the construction and repair of all types of tennis courts, being structures or related improvements to real estate within the context of s. 468.102, are proper activities for certified general contractors. Building contractors and residential building contractors are limited by law as to the type of services they can engage in. "`Building contractors' are those whose services are limited to construction of commercial buildings and single or multiple dwelling residential buildings . . . and accessory use structures in connection therewith." Section 468.102(1)(b), F. S. The services of residential building contractors "are limited to construction . . . of family unit residences not exceeding two stories in height and accessory use structures in connection therewith." Section 468.102(1)(c), F. S. "Accessory" is defined by Black's Law Dictionary, Revised Fourth Edition, as follows: Anything which is joined to another thing as an ornament, or to render it more perfect, or which accompanies it, or is connected with it, as an incident, or as subordinate to it, or which belongs to or with it. "Accessory" has also been defined to mean: As a noun: a thing that contributes subordinately to the effecting purpose or to an artistic effect; an adjunct or accompaniment; any article or device that adds to convenience or effectiveness of something else but is not essential . . ., connecting as an incident or subordinate to a principal, additional. [1 Words and Phrases at 440.] An "accessory use" is one which is subordinate to, clearly incidental to, customarily in connection with, and ordinarily located in the same lot with principal use. Board of County Com'rs of Boulder County v. Thompson, Colo., 493 P.2d 1358, 1360. Recreation facilities, including lighted recreation fields, swimming pools, and tennis courts have all been permitted as "accessory use" in a residential zone. Cf. Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints v. Ashton, 448 P.2d 185, 188; Town of Bloomfield v. Parizot,211 A.2d 230, 232; Hardy v. Calhoun, Tex. Civ. App., 383 S.W.2d 652, 653. It would seem that these definitions and examples of the terms "accessory" and "accessory use" fully justify the conclusion that tennis courts are accessory use structures in connection with commercial and residential buildings or structures as well as a "structure" and a "related improvement to real estate." Therefore, both certified "building contractors" and "residential building contractors" are qualified to construct or repair all types of tennis courts, but only when such courts are accessory use structures as prescribed by s. 468.102(1)(b) and (c), F. S., and as hereabove discussed.